**\*NOT FOR PUBLICATON\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTERN FUNDING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH SHORE TOWING, INC., et. al.,<br><br>Defendants. | Civil Action No. 3:19-cv-12853-FLW-TJB<br><br>**OPINION** |

**<u>WOLFSON, Chief Judge:</u>**

Plaintiff Western Funding, Inc. ("Western"), sues Defendants South Shore Towing, Inc., SS Tow Enterprises, LLC, the New Jersey Turnpike Authority ("the NJTA"), Peter Iadarola, and Jennifer Iadarola[1] under 42 U.S.C. § 1983 over a towed car. According to Western, the NJTA instructed South Shore to tow a car in which Western has a first-priority security interest, then South Shore refused to release the car unless Western paid the towing/storage fees, all without review or a hearing. South Shore now moves to dismiss Western's Second Amended Complaint under Fed. R. Civ. P. 12(b)(1), alleging that it is not subject to § 1983 because it is merely a private entity hired as an independent contractor.[2] The NJTA also moves to dismiss Western's Second

---

1     South Shore and the NJTA are referred to collectively as "Defendants" in this Opinion.

2     South Shore styles its dismissal motion under Rule 12(b)(1), but I will analyze the motion under Rule 12(b)(6) because South Shore argues that Western cannot establish the requisite elements of a § 1983 claim, not that there is a jurisdictional bar to hearing the claim in federal court. *See White v. Hinds*, 675 Fed. App'x. 186, 188 (3d Cir. 2017). I also reject Defendants' argument that Magistrate Judge Bongiovanni's Order imposing service costs and attorneys' fees under Fed. R. Civ. P. 4(d) must be vacated pursuant to Fed. R. Civ. P. 60(b). *See* ECF No. 13. On September 25, 2019, Judge Bongiovanni imposed costs and fees because Defendants refused to waive service but did not explain why they had cause to do so. *Id.* at 2-3. Defendants now advance the novel argument that Judge Bongiovanni lacked subject matter jurisdiction to award costs/fees, without offering any reason why subject matter jurisdiction is absent.

Amended Complaint under Fed. R. Civ. P. 12(b)(6), alleging that Western has not adequately plead *Monell* liability. For the following reasons, South Shore's Motion to Dismiss Plaintiff's § 1983 claim against the company is **GRANTED**, its Motion to Dismiss Plaintiff's § 1983 claim against Peter Iadarola is **GRANTED**, and its Motion to Dismiss Plaintiff's § 1983 claim against Jennifer Iadorola is **DENIED**, and the NJTA's Motion to Dismiss Plaintiff's § 1983 claim against it is **DENIED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

South Shore tows disabled cars from the Garden State Parkway. *See* Sec. Am. Compl., ¶ 23; NJTA Br., Ex. A, ¶ 2.[3] It does so pursuant to an "Agreement for Routine Towing Services" with the NJTA. *See* NJTA Br., Ex. A. The Agreement provides that "towing services" are "an essential function" of the Parkway, grants South Shore the right to remove cars from Zone 4, and exempts South Shore from up to 750 tolls annually. *Id.* South Shore pays the NJTA $11,250 per year under the Agreement, *id.* ¶ 5, and is classified as an independent contractor. *Id.* ¶ 14.

On May 28, 2018, the NJTA directed South Shore to tow a partially-overturned Nissan. *See* Sec. Am. Compl., ¶¶ 29-30. The Nissan was "way down" an embankment "resting on [a] broken tree suspended in [the] air off [the] ground." *See* South Shore Br., Ex. B. On June 4, 2018, Jennifer Iadarola, South Shore's manager, copied Western on a letter addressed to owner Duane

---

Independently, I find that subject matter jurisdiction exists. *See* 28 U.S.C. § 1331. Defendants also argue that Judge Bongiovanni's award is unreasonable. Although it is improper to attempt to appeal the award in a dismissal motion, I would uphold her decision. *See Machado v. Law Offices of Jeffrey*, No. 14-7401, 2017 WL 2838458, *2 (D.N.J. June 30, 2017) ("Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience.").

3   I consider the allegations in Western's Second Amended Complaint as well as "exhibits attached to [it]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). I also considers "undisputedly authentic document[s] that [Defendants] attach[] as an exhibit to [their] motion to dismiss," to the extent that Western's claims are based thereon. *Id.* I further consider extrinsic documents that are integral to Western's Complaint. *See Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2003); *Shelley v. Wilson*, 339 Fed. App'x. 136, 137 n.2 (3d Cir. 2009).

T. Tims, informing Tims that he is liable "for any and all accrued towing and storage charges" and proposing to "negotiate the fees," which "usually exceed the value of the vehicle," as well as "dispose of [the car]." *Id.* Ex. C. Tims apparently never responded, so South Shore refused to release the car to Western unless Western paid the towing/storage fees itself, *see* Sec. Am. Compl., ¶ 35, which at the time totaled $652.88, *id.*, Ex. D, pursuant to South Shore's statutory garage lien.[4] Western demanded the car free and clear of payment pursuant to its first-priority security interest, which it alleges takes precedence under state law. *Id.* ¶ 43. South Shore continues to possess the Nissan. *Id.* ¶ 18.

On May 23, 2019, by which time the towing/storage fees exceeded $8,566.48, Western filed suit against South Shore under 42 U.S.C. § 1983 for unlawfully possessing the Nissan. *See* ECF No. 1. South Shore initially moved to dismiss the Complaint on November 19, 2019, pursuant to Fed. R. Civ. P. 12(b)(1), because Western did not allege state action. *See* ECF No. 20. Western filed its First Amended Complaint on June 11, 2020, naming the NJTA as a defendant. *See* ECF no. 27. On July 30, 2020, the NJTA moved to dismiss that Complaint under Fed. R. Civ. P. 12(b)(6) for failing to allege a connection between it and South Shore sufficient to establish municipal liability under § 1983. *See* ECF No. 34. Western then filed a Second Amended Complaint on August 5, 2020. *See* ECF No. 35. Count I asserts that South Shore and the NJTA violated the Fourth and Fourteenth Amendments, and are liable under § 1983 to that extent. *See* Sec. Am. Compl., ¶¶ 69-75. Count II seeks declaratory relief for the same. *Id.* ¶¶ 92-97.

According to Western, liability exists under § 1983 for the following reasons: the NJTA granted South Shore a monopoly over "essential" towing services in Zone 4 of the Garden State Parkway; instructed South Shore to tow the Nissan in the first place; compensated South Shore for

---

4   A garage keeper such as South Shore has a statutory lien on a car for, *inter alia*, the cost of storing the car. *See* N.J.S.A. § 2A:44-21; *id.* § 12A:9-310.

3

its services with possession of the Nissan (or the fees paid to recover it); received a "kickback" in the form of the $11,250 annual fee; and South Shore held the car indefinitely, subject to fees, to raise funds to pay the NJTA and turn a profit under the Agreement. *See* Sec. Am. Compl., ¶¶ 69-75. Western alleges that this arrangement violates due process because neither the NJTA nor South Shore provided any means to challenge the tow or the fees, and the Fourth Amendment because the NJTA did not obtain a warrant before initiating the tow. *Id.* ¶ 72. South Shore renewed its dismissal motion with Western's consent, which I deemed to be refiled. *See* ECF No. 43. Both motions are now pending.

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). For example, "[a] pleading that

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678, nor am I compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[5] *West v. Atkins*, 487 U.S. 42, 48 (1988);

---

5   The parties do not contest whether Plaintiff has alleged a plausible violation of a protected right. Plaintiff mainly charges Defendants with a procedural due process violation for towing the Nissan, storing it subject to fees without a hearing or review, and continuing to do so indefinitely, *see* Sec. Am. Compl., ¶ 69, and adds a Fourth Amendment violation for the same course of conduct. Defendants vaguely claim at times that neither constitutes a cognizable deprivation under the Constitution, but they fail to substantively address this issue, moving to dismiss on state action grounds instead. So, for the purposes of these motions, I assume that Plaintiff has asserted a deprivation. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."); *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) ("To state a claim under § 1983 for deprivation of procedural due process, a plaintiff must allege that (1) [it] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [it] did not provide 'due process of law.'"); *Rosado v. City of Coatesville*, No. 19-02426, 2020 WL 1508351, at *4 (E.D. Pa. Mar. 30, 2020) (finding "enough plausible facts to state a claim" for a procedural due process violation under these circumstances).

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two – and only two – allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.").

    A. *Plaintiff's Claim Against the NJTA*

I begin with Plaintiff's claim against the NJTA, a governmental entity, which asserts *Monell* liability. By its terms, § 1983 applies only to "persons." *Id.* "States, arms of the States, and state officials acting in their official capacities are 'not persons' within the meaning of [the] statute." *Didiano v. Balicki*, 488 Fed. App'x. 634, 638 (3d Cir. 2012); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67, 71 (1989); *Howlett v. Rose*, 496 U.S. 356 (1990) ("*Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983."); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (stating these rules embody the doctrine of qualified immunity); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (stating the purpose of qualified immunity is "to shield officials from harassment, distraction, and liability when they perform their duties reasonably"); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005).

*Monell* extends § 1983 liability to municipalities, but only if a plaintiff alleges that an official policy or unofficial custom caused the constitutional violation of which he complains. *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690 (1978); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). A municipality is subject to *Monell* liability as long as it is not "considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 690 n.54; *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 813 (3d Cir. 1991) (en banc). "[T]he relationship between the State and the entity in question" is critical to sovereign immunity status

6

under the Eleventh Amendment. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). So, too, for *Monell* liability under § 1983.

A party is an "arm of the state," and hence not a "person" for § 1983 purposes, when "the state is the real, substantial party in interest." *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019). The Third Circuit "employs a fact-intensive three-part test" to answer that question. *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018); *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). Courts examine: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007). Because these factors are "co-equal," *Patterson*, 915 F.3d at 950; *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239-40 (3d Cir. 2005), and none is "predominant," *Karns*, 879 F.3d at 514-15, courts must "balance them" if they point in "different directions." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016).

This is regarded as "the most important" inquiry under § 1983, *see Indep. Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1173 (3d Cir. 1997), no doubt because "[t]he Eleventh Amendment [ ] functions as a complete bar [to] . . . § 1983 liability." *Karns*, 879 F.3d at 519. Somehow, however, the parties in this case do not brief it. The NJTA assumes without discussion that it is a municipality in the sense of *Monell* and proceeds to the merits of Plaintiff's claim. I am far less certain of the NJTA's status than the parties.[6] To begin, it is unclear which way

---

6   An arm of the state may waive its sovereign immunity and consent to be sued. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241 (1985). However, "waivers . . . to be effective, must be unequivocally expressed," *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (quotation and citations omitted), not implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted). Failure to object to a court's jurisdiction is not enough. *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940) (describing sovereign immunity as jurisdictional). For that reason, a party may raise sovereign immunity for the first time at any stage of litigation, even on appeal. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974). The court may also (but need not) raise the

7

the first factor points. *See Patterson*, 915 F.3d at 950 ("When analyzing the funding factor, we first ask '[w]hether the money that would pay the judgment would come from the state.'") (quoting *Fitchik*, 873 F.3d at 659); *Karns*, 879 F.3d at 515 ("[This] includes considering 'whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts.'") (quoting *Fitchik*, 873 F.2d at 659); *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 228-29 (3d Cir. 2006) ("[T]he crux of the state-treasury criterion [is] whether the state treasury is legally responsible for the payment of a judgment [not merely whether the state will be the source of the funding for it].").

Partly because of the NJTA's apparent "substantial fiscal . . . autonomy," such as the ability to issue revenue bonds payable from tolls, at least one court in this circuit has held that "the [NJTA] is not protected by the Eleventh Amendment as a matter of Federal law." *S. J. Groves & Sons Co. v. New Jersey Tpk. Auth.*, 268 F. Supp. 568, 574-78 (D.N.J. 1967) (citing N.J.S.A. § 27:23-1, *et. seq.*); *see also New Jersey Turnpike Authority v. Parsons*, 3 N.J. 235 (1949) (providing a comprehensive analysis of the NJTA's status under state law in light of its statutory powers). At the same time, however, sovereign immunity law has developed significantly since the 1960s. *See, e.g.*, *Karns*, 879 F.3d at 513 (describing changes in just the last 30 years, rejecting outdated "financial information," and reversing its decision that NJ Transit is not entitled to Eleventh

---

defense *sua sponte*. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it."); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 515, n.19 (1982) (permitting but not requiring same); *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000) (same); *see also Fourte v. Barilla Appraisal Servs.*, No. 16-9555, 2018 WL 2186472 (D.N.J. May 11, 2018) (raising the defense *sua sponte* in the context of a *Bivens* action); *Womack v. Smith*, No. 06-2348, 2009 WL 5214966, at *3 (M.D. Pa. Dec. 29, 2009) (same, and dismissing claim). Accordingly, it is appropriate to raise this issue despite the fact that the parties did not brief it. Moreover, if the NJTA does waive any sovereign immunity defense to which it is entitled, the parties and the Court must still analyze the factors herein for the purposes of determining whether the NJTA is a person under § 1983.

Amendment immunity). In particular, the inquiry into sovereign immunity status is not "a formalistic question of ultimate financial liability" anymore, *see Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431 (1997), and courts in the Third Circuit "no longer ascribe primacy to the [state-treasury] factor." *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005). I must therefore consider this case "on its own terms" and "on the record before [me]" by "weighing the qualitative strength of each individual factor in the unique factual circumstances at issue" here, and in view of modern bodies of law. *Karns*, 879 F.3d at 514; *see also Maliandi*, 845 F.3d at 84 (explaining that each case requires a "fresh analysis" and "individualized determinations") (quotations and citation omitted). To the extent that the parties have not briefed the NJTA's current financial relationship with the State, I cannot properly analyze the first factor.

The second factor tends to suggest that the NJTA is an arm of the state. *See Karns*, 879 F.3d at 516 ("Considerations [under this factor] include how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation."); *Fitchik*, 873 F.2d at 659; *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 90 (3d Cir. 2016) (analyzing other considerations); N.J.S.A. § 27:23-3(a) ("There is hereby established in the State Department of Transportation a body corporate and politic, with corporate succession, to be known as the 'New Jersey Turnpike Authority.'"); *accord Roberts v. New Jersey Tpk. Auth.*, No. 2443-14, 2016 WL 6407276, at *4 (N.J. Super. Ct. App. Div. Oct. 31, 2016) (collecting state cases holding that the NJTA is an arm of the state); *Maliandi*, 845 F.3d at 91 (regarding state cases as important under this factor); *Patterson*, 915 F.3d at 953 (same); *Karns*, 879 F.3d at 517 ("In the twenty-eight years since our [prior decision] . . . it has become much more apparent that New Jersey law regards NJ Transit as an arm of the state."). Still, because the parties have not offered any facts or law on how New

9

Jersey courts currently treat the NJTA, I cannot properly analyze this factor either, and should not do so without input from the parties in the first instance.

The third factor, like the first, is unclear. *See Patterson*, 915 F.3d at 955 ("The third factor instructs [courts] to examine the degree to which an entity is autonomous from the state."); *Maliandi*, 845 F.3d at 96 (instructing courts to "focus[] on the entity's governing structure and the oversight and control exerted by a State's governor and legislature"); *Febres*, 445 F.3d at 231-32; *accord Fitchik*, 873 F.2d at 663-64. While perhaps the NJTA "exercises a number of [fiscal] powers free of any substantial legislative supervision," *S.J. Groves*, 268 F. Supp. at 574, such as issuing bonds, entering into contracts, and acquiring property, and appears to be an "independent public authority" in these ways, *id.*, it is also subject to oversight. *See, e.g.*, N.J.S.A. § 27:23-3(b) (providing that the NJTA is comprised of three members appointed by the Governor with the advice and consent of the Senate, and that the Governor has for-cause removal power). Without any further facts or law on the degree of control the political branches exert over the NJTA, I cannot properly analyze the third factor.

In sum, because I do not have the benefit of the parties' positions before me, or any information on the relevant factors and subfactors, I cannot "adhere to the balancing analysis" articulated by the Third Circuit or make a fair determination as to whether the NJTA is liable to suit under § 1983. *Karns*, 879 F.3d at 519. To that extent, I **DENY** the NJTA's dismissal motion without prejudice and **ORDER** supplemental briefing on the question whether the NJTA is an arm of the state.[7] The parties should provide a comprehensive analysis consistent with the law discussed in this Opinion. The NJTA has twenty (20) days from the date of this Opinion to submit its motion, after which Plaintiff has twenty (20) days to respond.

---

7    Having so found, I cannot—and further, decline to—reach all other issues regarding Plaintiff's *Monell* claim against the NJTA at this time.

10

B. *Plaintiff's Claim Against South Shore*

Plaintiff also brings a § 1983 claim against South Shore for the course of conduct described *supra*. The gravamen of South Shore's dismissal motion is that it is not a state actor because the NJTA "merely hired [it]" as an independent contractor. That is dispositive, South Shore contends, because the NJTA neither "direct[s] the manner in which" South Shore performs tows nor "has [any] control over [its] acts." *Id.* Plaintiff responds that the NJTA's role in granting South Shore towing rights in Zone 4 of the Garden State Parkway, instructing South Shore to tow cars, and profiting from South Shore's services is sufficient to establish state action, and maintains that South Shore's dismissal motion must fail for that reason alone. *See* Pl. Br., at 2.

Implicit in Plaintiff's position is that the actions of South Shore's employees are attributable to South Shore, since South Shore itself cannot carry out a deprivation except through the acts of its employees. While Jennifer Iadarola allegedly personally violated Plaintiff's constitutional rights, *see infra*, Plaintiff's § 1983 against South Shore "cannot" proceed "under a theory of *respondeat superior* or vicarious liability" strictly based on her actions, or because it employs an alleged tortfeasor.[8] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir.

---

8   It is well-established that § 1983 suits against municipalities must allege *Monell* liability. *See supra*; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). But the Supreme Court has not decided whether that rule extends to private entities acting under the color of state law, such as South Shore. The overwhelming majority of courts have applied *Monell* in such circumstances, thereby rejecting *respondeat superior* as a basis for liability. *See Rodriguez v Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003); *Dubbs v Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003); *Jackson v Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002); *Johnson v Corr. Corp of America*, 26 Fed. App'x. 386, 388 (6th Cir. 2001); *Sanders v Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993); *Harvey v Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992); *Rojas v Alexander's Dep't Store, Inc.*, 924 F2d 406, 408 (2d Cir. 1990); *Taylor v List*, 880 F.2d 1040, 1046-47 (9th Cir 1989); *see also Victory Outreach Ctr. v. Melso*, 371 F. Supp. 2d 962, 646 (E.D. Pa. 2004); *Thomas v Zinkel*, 155 F. Supp. 2d 408,412 (E.D. Pa. 2001). Still, none of these courts analyzed the issue in any depth, instead simply concluding that private entities should be treated identically to municipalities. At least one court in this circuit has questioned that conclusion. *See Taylor v Plousis*, 101 F. Supp. 2d 255, 263-64 & n.4 (D.N.J. 2000) (stating a "lingering doubt" about whether the "public policy considerations" underlying *Monell* "should apply when a governmental entity chooses to discharge a public obligation by contract with a private corporation"); *see also Hutchison v. Brookshire Brothers, Ltd.*, 284 F. Supp. 2d 459,472, 473 (E.D.

2003). To state a § 1983 claim against South Shore, in addition to alleging state action, Plaintiff must plead a *Monell* violation involving *South Shore's* policies or customs.[9] *See id.* at 583 ("In order for [Prison Health Services, a private company] to be liable, the Natales must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege."); *Thomas v. Zinkel*, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) ("Liability of [municipal] entities . . . must be based upon a governmental policy . . . . The same standard applies to a private corporation, . . . that is acting under color of state law."); *Miller v. Hoffman*, 1998 WL 404034, at *4 (E.D. Pa. July 7, 1998) (analyzing a claim against a private entity under same). I take each element in turn, starting with state action.

  i.  State Action

The Fourteenth Amendment regulates state action only. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982). The same is true for § 1983, which "subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state."[10] *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted); *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element

---

Tex. 2003); Richard Frankel, *Regulating Privatized Government through § 1983*, 76 U. CHI. L. REV. 1449 (2009) (contending that courts should impose *respondeat superior* liability on "profit-motivated, private entities" notwithstanding *Monell* for a variety of policy reasons). I am, however, bound by the Third Circuit's statement in *Natale* that *Monell*'s rule regarding *respondeat superior* extends to private entities. *See* 318 F.3d at 583.

9   Of course, as discussed *supra*, to state a claim against the NJTA, Plaintiff must plead that an *NJTA* policy or custom harmed it. I do not reach that issue here because of the sovereign immunity question. *See supra*, note 7.

10   In this context, "under color of state law" means the same thing as "state action." *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982); *Abbott v. Latshaw*, 164 F.3d 141, 145 (3d Cir. 1998) ("If . . . conduct satisfies the state action requirement of the Due Process Clause, then it also qualifies as action 'under color of state law' for § 1983 purposes.").

of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (quotations and citation omitted). As a threshold matter, then, a plaintiff seeking to impose liability on a private entity under § 1983 must plausibly allege state action. *See Benn v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d Cir. 2004).

There is no "simple line" distinguishing private actors from state actors. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). The question turns on "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). A plaintiff may establish a nexus in one of three ways: (1) "the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "the private party has acted with the help of or in concert with state officials"; and (3) "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). No matter the test, "[t]he inquiry is fact-specific." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see also Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts are crucial").

Although its Second Amended Complaint is not a model of clarity, Plaintiff seems to rely on all three tests. To show that South Shore performed a traditional and exclusive state power, Plaintiff alleges that the NJTA regulates the Garden State Parkway, which is a public toll road, and "routine towing services" are "an essential function of operating it," which the NJTA delegated by contract to Plaintiff, a private entity. *See* Sec. Am. Compl., ¶¶ 23-26; Pl. Br., at 3-4; South Shore Br., Ex. A. To the extent that these are the sum total of Plaintiff's allegations under the first test, they do not plausibly allege state action. While regulating roads may well be a traditional state

13

function, *see Carroll v. City of Phila.*, No. 87-0592, 1989 WL 114721, at *4 (E.D. Pa. Sept. 29, 1989) ("The police powers constitutionally permit regulation of . . . public roadways."); *see also New Orleans Gas-light Co. v. Louisiana Light & Heat Producing & Mfg. Co.*, 115 U.S. 650, 661 (1885) ("[Police powers] refer to . . . the authority of the state to . . . provide for the establishment, maintenance, and control of public high ways, [and] turnpike roads."), Plaintiff has not stated how or why it is an exclusive one reserved for governments alone. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978) ("While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'"); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 165 (3d Cir. 2001) ("[The public function] test imposes a rigorous standard that is rarely . . . satisfied.") (quotations and citation omitted); *see also Kach*, 589 F.3d at 648 (describing the public function test as imposing a "heavy burden" on a plaintiff).

Plaintiff's allegations fare better under the other tests. To show that South Shore acted in concert with the NJTA, Plaintiff alleges that the NJTA deemed the Nissan abandoned and ordered South Shore to tow it, without which the car never would have entered South Shore's possession. *See* Sec. Am. Compl., ¶¶ 3-8; Pl. Br., at 12-13. An invoice from South Shore confirms this, describing the tow as originating from a "police call." *See* South Shore Br., Ex. B. Plaintiff plausibly alleges state action on this basis. *See, e.g.*, *Stypmann*, 557 F.2d at 1341 ("[The government] makes the initial determination that a car will be towed and summons the towing company. The towing company tows the vehicle only at the direction of the [government]. The [government] designates the garage to which the vehicle will be towed."); *Tedeschi v. Blackwood*, 410 F. Supp. 34, 41-42 (D. Conn. 1976) ("The towing of an abandoned . . . vehicle . . . by either the [government] or a private garage constitutes 'state action,' for a vehicle can be towed . . . only at the request of a state agent. Meaningful participation by a state agent, pursuant to a state statute,

14

in the deprivation of a person's property by another private person unquestionably brings the entire transaction 'under color of state law.'"); *Lee v. NNAMHS*, 2007 WL 2462616, at *3 (D. Nev. Aug. 28, 2007) (denying dismissal motion because "plaintiff's car was towed at the direction of a state officer and pursuant to laws enacted to further the state's interest maintaining an efficient traffic flow").

Likewise, to show that the NJTA "insinuated itself into a position of interdependence" with South Shore, Plaintiff alleges that: (1) South Shore pays the NJTA $11,250 annually for the privilege of towing cars from Zone 4; (2) the NJTA indirectly compensates South Shore with custody of whatever cars it tows; (3) the NJTA knows South Shore will hold any car it tows subject to fees, and impose a garage lien in the event of nonpayment; (4) the NJTA knows South Shore may, in time, foreclose on its garage liens by selling or junking the cars pursuant to its authority under N.J.S.A. § 39:10A-9, which provision does not provide a hearing or review; (5) the NJTA treats profits from fees/lien sales as reimbursement for towing jobs, or else the Agreement would not be profitable for South Shore; and (6) the sole objective of this arrangement is to effectuate the NJTA's statutory duty to maintain the Parkway. *See* Sec. Am. Compl., ¶¶ 2-4, 8, 28, 39, 79-80; Pl. Br., at 16-18. Given these facts, Plaintiff plausibly alleges state action on this basis as well. *See, e.g.*, *Stypmann*, 557 F.3d at 1341 ("The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws."); *Tate*, 2019 WL 3860187, at *3 n.3 ("assuming" a towing company is a "plausible state actor[]" for similar reasons); *Mays*, 503 F. Supp. 1264 (finding state action "because of the governmental involvement surrounding the tow and detention of the vehicle").

South Shore makes two arguments to the contrary, neither of which is availing. First, South Shore argues that it is not a state actor when it demands towing/storage fees because it does so "without any involvement" from the NJTA, even if it was a state actor at the time of the tow. *See* South Shore Br., at 5. The Eighth Circuit has persuasively rejected a similar argument. Based on its reasoning, a private entity acting under color of state law does not cease to be a state actor merely by the passage of time. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) (finding defendant to be a state actor "in towing, storing, and selling" plaintiff's car). Second, South Shore argues that it is not a state actor because its Agreement with the NJTA classifies it as an independent contractor. *See* South Shore Br., at 1-2. To the contrary, "independent contractors can be liable for § 1983 violations if they are acting in a joint function with the state," as alleged here.[11] *See Marulli v. Alloy*, 2006 WL 2772553, at *4 (D.N.J. Sept. 23, 2006); *see also West*, 487 U.S. at 55 ("Contracting out [a service] does not relieve the State of its constitutional duty.").

In sum, accepting the allegations in the Second Amended Complaint as true, Plaintiff has plausibly alleged that South Shore is a state actor. *See, e.g.*, *Rosado*, 2020 WL 1508351, at *5 ("Ken's Towing's work is intertwined with . . . the City."); *Orkowski v. McCauley*, 2019 WL 2246781, at *4 (E.D. Pa. May 22, 2019) (permitting § 1983 claim to proceed against towing company based on allegations that company acted with township officials to unlawfully seize property); *Foster v. City of Philadelphia*, 2014 WL 5821278, at *22 (E.D. Pa. Nov. 10, 2014) ("[Towing company] is a state actor for § 1983 purposes by virtue of maintaining an ongoing salvor relationship and contract with the City of Philadelphia.").

    ii.    *Monell* Liability

---

11    I also note that it is immaterial whether South Shore was pursuing a private goal when it towed/stored the Nissan, such as profit. *See Georgia v. McCollum*, 505 U.S. 42, 54 (1992) ("Whenever a private actor's conduct is deemed 'fairly attributable' to the government, it is likely that private motives will have animated the actor's decision.").

16

Although Plaintiff plausibly alleges state action, it does not attempt to establish that a South Shore policy or custom caused the deprivation of which it complains, even reading the Second Amended Complaint liberally and drawing all reasonable inferences in its favor. *See, e.g.*, Pl. Br., at 2 ("South Shore's particular *method* of collecting cars is irrelevant.") (emphasis in original); *id.* at 12 ("Western pled that NJTA's Contract with South Shore embodied *the NJTA's* policy for disposing of vehicles on its roadways.") (emphasis in original); *id.* at 13 ("[I]t is irrelevant whether NJTA can set *South Shore's* policies, because the [Second Amended Complaint] attacks NJTA's own policy (the Contract) relating to the disposition of vehicles on NJTA's highways.") (emphasis in original); *id.* at 14 ("NJTA is responsible for its own policy of subcontracting an essential function for a profit without ensuring compliance with minimum constitutional requirements."); Sec. Am. Compl., ¶¶ 23-28. Plaintiff instead proceeds as if it may assert a § 1983 claim against South Shore vicariously, through Jennifer Iadarola's actions, and as if it need only establish state action to defeat dismissal. This is improper. *See Natale*, 318 F.3d at 583. To the extent that Plaintiff has failed to assert a *Monell* violation against South Shore, I **GRANT** South Shore's Motion to Dismiss without prejudice. If Plaintiff wishes to replead its claim, it may file a Motion to Amend before the Magistrate Judge.[12]

C. *Plaintiff's Claim Against Jennifer and Peter Iadarola*

Assuming that South Shore and its employees are state actors, and that a constitutionally cognizable deprivation occurred here, Plaintiff asserts § 1983 claims against Peter Iadarola, President of South Shore, and Jennifer Iadarola, manager of South Shore. Although Jennifer and Peter are "persons" within the meaning of § 1983, they must nevertheless be personally involved

---

12   Should Plaintiff choose to file this motion, the parties must also address whether Plaintiff's claim against South Shore may proceed if the NJTA is dismissed under sovereign immunity. *Cf. Foster v. City of Phila.*, 2014 WL 5821278, at *30.

17

in the alleged deprivation to be liable for it. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Personal involvement means playing an "affirmative" role. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (quoting *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)). An affirmative role, in turn, means directing the deprivation, actually knowing about it, or acquiescing in it. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) ("[S]upervisors can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.").

According to Plaintiff, Jennifer wrote and signed South Shore's letter to Tims (on which Plaintiff was copied) threatening to notify the police if Tims did not pay the towing/storage fees to repossess his car. *See* Sec. Am. Compl., ¶ 40. Then Jennifer apparently filed a criminal complaint against Tims and Plaintiff for abandoning the Nissan at South Shore's facility, *see id.* ¶¶ 42-43, in which she sought a fine between $600 and "well over $1,000," *id.* ¶¶ 44, and offered to drop the case only if Plaintiff settled the balance due in full, all without providing review or a hearing. *Id.* ¶ 6. Jennifer also purportedly signed a "Certification in Support of Probable Cause," which recounted a call between South Shore and "lienholder," who wanted to "get [the] vehicle picked up" but was "refusing to pay [the] bill." *Id.* ¶ 43. Because these allegations tend to suggest that Jennifer knew about, perhaps even furthered, the deprivation Plaintiff alleges, they are sufficient to sustain a § 1983 claim against her at this stage. However, because Plaintiff offers no specific allegations against Peter, I dismiss Plaintiff's § 1983 claim against him without prejudice.

IV.   CONCLUSION

South Shore's Motion to Dismiss Plaintiff's § 1983 claim against the company is **GRANTED** because Plaintiff has not pled *Monell* liability. Plaintiff's claim is **DISMISSED** without prejudice, and Plaintiff may move to further amend before the Magistrate Judge. South

Shore's Motion to Dismiss Plaintiff's § 1983 claim against Peter Iadorola is **GRANTED** because the Second Amended Complaint contains no specific allegations against him. Plaintiff's claim is **DISMISSED** without prejudice. South Shore's Motion to Dismiss Plaintiff's § 1983 claim against Jennifer Iadorola is **DENIED** because Plaintiff has sufficiently alleged state action and personal involvement. The NJTA's Motion to Dismiss Plaintiff's § 1983 claim is likewise **DENIED**, and the parties are **ORDERED** to submit supplemental briefing on the question whether the NJTA is an arm of the state. The NJTA has twenty (20) days to file its motion from the date of this Opinion, after which Plaintiff has twenty (20) days to respond. Finally, Defendants are ordered to pay service costs/fees consistent with Judge Bongiovanni's Order.[13]

**DATED**: April 14, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[13] South Shore has apparently offered to release the Nissan to Plaintiff without payment of towing/storage fees, consistent with Western's request in Count II. *See* Sec. Am. Compl., ¶ 94 ("Western seeks a declaration that all monetary charges asserted by South Shore against Western relative to the [Nissan] are null and void against Western."). Plaintiff declined, presumably because it does not merely assert that it is improper to charge towing/storage fees to a first-priority lienholder under state law, but also that South Shore is responsible for "violations of the United States Constitution" arising from its relationship with the NJTA. *See* Sec. Am. Compl., ¶¶ 95-96. South Shore's willingness to "turn over possession" therefore does not terminate Western's case against it. *Cf.* South Shore Rep. Br., at 3 ("It is improper for Plaintiff to pursue claims against South Shore where the relief sought can only be provided by the NJTA, especially when Plaintiff is seeking attorney's fees in this litigation which are unfairly increasing despite South Shore's reasonable offer to turn over possession of the vehicle in question to Plaintiff."). Even so, because of South Shore's offer, and in the interests of conserving judicial and party resources, counsel are well-advised to consider settlement at this early stage, and may further address this with the Magistrate Judge.