**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| WESTERN FUNDING, INC.,<br><br>      Plaintiff,<br><br> v.<br><br>SOUTH SHORE TOWING, INC., SS TOW ENTERPRISES, LLC, PETER IADAROLA, JENNIFER IADAROLA, and NEW JERSEY TURNPIKE AUTHORITY,<br><br>      Defendants. | Civ. Action No. 19-12853 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

  Plaintiff Western Funding, Inc. ("Plaintiff" or "Western") brings this action against defendants South Shore Towing, Inc., SS Tow Enterprises, LLC (collectively, "South Shore"), Peter Iadarola, Jennifer Iadarola, and the New Jersey Turnpike Authority ("NJTA" or the "Authority"), under 42 U.S.C. § 1983 for alleged constitutional violations stemming from a towing incident on the Garden State Parkway. In an Opinion dated April 14, 2021, this Court dismissed claims in Plaintiff's Second Amended Complaint against South Shore and Peter Iadarola, but claims against Jennifer Iadarola remain. ECF No. 48. Additionally, the Court denied NJTA's motion to dismiss and requested supplemental briefing from the parties addressing whether NJTA is entitled to sovereign immunity as an arm of the State of New Jersey. Having reviewed the parties' supplemental briefing, I now conclude that NJTA is an arm of the State. Accordingly, NJTA is immune from suit under the Eleventh Amendment and, for that reason, NJTA also does not qualify as a "person" that is subject to suit under section 1983. NJTA's renewed motion to dismiss the Second Amended Complaint is

1

therefore **GRANTED**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This Court's Opinion dated April 14, 2021, recounts the facts and procedural history relevant to this case. *See* ECF No. 48 at 2–4. Below I summarize only the background relevant to the issue before the Court, accepting as true Plaintiff's allegations in the Second Amended Complaint.

South Shore tows cars from the New Jersey Turnpike and Garden State Parkway pursuant to an "Agreement for Towing Services" (the "Agreement") with NJTA. ECF No. 35, Second Amended Complaint ("SAC") ¶¶ 2, 23, 27. Under the Agreement, South Shore pays NJTA an annual fee, and NJTA grants South Shore the right to tow vehicles from certain zones on the highways NJTA regulates. *Id.* ¶ 28. On May 28, 2018, South Shore towed a vehicle at NJTA's direction. *Id.* ¶¶ 29–30. At that time, Western allegedly "held a first priority lien" on the vehicle South Shore towed. *Id.* ¶ 31. South Shore notified the owner of the vehicle that he was liable for any accrued towing and storage fees, but the owner never responded. *See* ECF No. 20-3. When Western contacted South Shore to recover the vehicle pursuant to its first-priority lien, South Shore refused to release the vehicle unless Western paid the outstanding towing and storage fees. SAC ¶ 35. Western refused to pay the fees, *id.* ¶ 38, and brought the instant suit.

In its Second Amended Complaint, Western asserts claims against NJTA, South Shore, its President, Peter Iadarola ("P. Iadarola"), and its manager, Jennifer Iadarola ("J. Iadarola"). In Count One, Western asserts claims against each defendant pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. *Id.* ¶¶ 69–75. According to Western, the towing arrangement between NJTA and South Shore violates the Due Process Clause of the Fourteenth Amendment because neither entity provided Western any means to challenge the tow or the fees. *Id.* Western also alleges that NJTA violated the Fourth Amendment because it did not obtain a warrant before requesting the tow. *Id.* Count Two seeks relief pursuant to the Declaratory Judgment

Act, 28 U.S.C. § 2201, declaring that South Shore's and J. Iadarola's actions are unconstitutional. *Id.* ¶¶ 92–97. Both South Shore and NJTA, along with the individual defendants, moved to dismiss.

I granted South Shore's motion to dismiss as to South Shore and P. Iadarola, but I denied South Shore's motion as to J. Iadarola, and I denied NJTA's motion. ECF No. 48 at 2. With respect to NJTA, I requested additional briefing addressing whether NJTA qualifies as an "arm of the state," in which case NJTA would be immune from suit under the Eleventh Amendment and, by extension, would not be subject to suit under section 1983. *See* ECF No. 48 at 7. Section 1983 imposes liability on a "person," and although "the Eleventh Amendment and § 1983 determinations are 'analytically distinct,' . . . an arm of the state . . . is not a 'person' for § 1983 purposes." *Karns v. Shanahan*, 879 F.3d 504, 519 n.6 (3d Cir. 2018) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 950, 956 n.2 (3d Cir. 2019) ("[A] state, including an entity that is an arm of the state, is not a 'person' under 42 U.S.C. § 1983, and therefore cannot be sued for damages under that statute."). Both parties have now filed briefs addressing whether NJTA qualifies as an arm of the State. NJTA argues that it does so qualify, *see* ECF No. 55, and Western disagrees. ECF No. 56.

## II.    LEGAL STANDARD

Whether NJTA is an arm of the state concerns both the Court's subject-matter jurisdiction, as relates to sovereign immunity, and whether Western has stated a claim upon which relief may be granted, as relates to whether NJTA is a "person" under section 1983. Accordingly, the standards under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure are both relevant. *See Maliandi v. Monclair State Univ.*, 845 F.3d 77, 82 (3d Cir. 2016) (reviewing contention that a university is an arm of the state and therefore immune from suit under the Eleventh Amendment as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)); *Indep. Enters., Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1168, 1172 (3d Cir. 1997) (reviewing

contention that the Pittsburgh Water and Sewer Authority is not a "person" under section 1983 as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)). NJTA does not specify whether it seeks dismissal as an arm of the state pursuant to Rule 12(b)(1) or 12(b)(6). Accordingly, I will analyze the issue under both standards.

### A.     Rule 12(b)(1)

Under Rule 12(b)(1), parties may move to dismiss a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Challenges to a district court's subject-matter jurisdiction include those asserting state sovereign immunity under the Eleventh Amendment. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). When challenging the court's subject-matter jurisdiction, the plaintiff bears the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Where, as here, a party asserts a facial challenge to subject matter jurisdiction "without disputing the facts alleged in the complaint," the Court must "consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

### B.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, courts conduct a three-part analysis. *Santiago v. Warminster Twp*., 629 F.3d 121, 130 (3d Cir. 2010). First, the court "takes note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [ ] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

NJTA contends that it is an arm of the state and is therefore immune from suit under the Eleventh Amendment. Plaintiff disagrees, and in the alternative, it argues that the doctrine of judicial estoppel precludes NJTA from invoking sovereign immunity given that NJTA took the opposite position in briefing it filed during a separate and unrelated litigation in 2008. For the reasons set forth herein, I conclude that NJTA is an arm of the state and that NJTA is not estopped from invoking sovereign immunity. And because NJTA is an arm of the state, it does not qualify as a "person" subject to suit under section 1983. Accordingly, Plaintiff's claims against NJTA are dismissed.

### A.   Sovereign Immunity

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In *Hans v. Louisiana*, 134 U.S. 1 (1890), the Supreme Court "extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thereby barring all private suits against non-consenting States in federal court." *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d

Cir. 2008).

The Eleventh Amendment also bars suits "against 'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi*, 845 F.3d at 83 (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). To determine whether an entity is an arm of the state, the Third Circuit applies a "fact-intensive," three-factor balancing test, *id.*, as articulated in *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989). The three factors are: (1) funding, which focuses on "whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the State"; (2) the entity's "status under state law," which assesses on "whether the entity is treated as an arm of the State under state case law and statutes"; and (3) autonomy, which concerns "whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control." *Maliandi*, 845 F.3d at 83.

After assessing each factor independently, the Court must balance them to determine whether the entity at issue qualifies as an arm of the state. Although *Fitchik* had treated the funding factor as "most important," 873 F.2d at 659, the Third Circuit "recalibrated" its balancing test following the Supreme Court's decision in *Regents of the University of California v. Doe*, which clarified that the Eleventh Amendment's sovereign immunity inquiry is not merely "a formalistic question of ultimate financial liability." 519 U.S. 425, 431 (1997); *Karns*, 879 F.3d at 513 (quoting *Maliandi*, 845 F.3d at 84). Accordingly, the Third Circuit "no longer ascribe[s] primacy to the [funding] factor." *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005). Courts must treat each of the three factors as "co-equal." *Id.* at 240. In doing so, courts must "not simply engage in a formulaic or mechanical counting up of the factors," but rather must "weigh[] the qualitative strength of each individual factor in the unique factual circumstances at issue." *Karns*, 879 F.3d at 514.

1.      *Funding*

The funding factor concerns "[w]hether the money that would pay the judgment would come from the state." *Karns*, 879 F.3d at 514 (quoting *Fitchik*, 873 F.2d at 659). Three considerations are relevant: "whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts." *Karns*, 879 F.3d at 514 (quoting *Fitchik*, 873 F.2d at 659). Since *Fitchik*, the Third Circuit has clarified that the "crux" of this inquiry is "not whether the state will be the principal source of any funding, but rather whether the state is 'legally responsible for the payment of [the] judgment.'" *Karns*, 879 F.3d at 514 (quoting *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 233 (3d Cir. 2006)).

Here, the funding factor weighs against immunity. Regarding the first subfactor, NJTA concedes that the State would not directly fund any judgment against the Authority. *See* ECF Nos. 55 and 59. Nor has NJTA identified any "legally enforceable obligation on the part of the State to pay money judgments entered against it." *See Maliandi*, 845 F.3d at 87 (holding possibility that state would increase appropriations to university, thereby indirectly funding judgment against it, was not sufficient to show that the state was legally responsible for such judgments); *Karns*, 879 F.3d at 514.

With respect to "'whether the agency has the money to satisfy the judgment,'" courts must determine whether "the entity has sources of funding aside from state appropriations and whether those funds could cover an adverse judgment." *Maliandi*, 845 F.3d at 88 (quoting *Fitchik*, 873 F.2d at 659). This factor typically requires "a review of the percentage of funds a given entity receives from the State." *Maliandi*, 845 F.3d at 88. Courts may also consider "the extent to which the State retains ownership over the funds it appropriates and whether the entity is insured against money judgments." *Id.* Here, the parties have not presented any documentation concerning the percentage of state funds NJTA receives. But NJTA's authorizing statute demonstrates that it has multiple

sources of revenue beyond any state appropriations it may receive. *See, e.g.*, N.J.S.A. 27:23-5(g) (authorizing the NJTA to "charge and collect tolls, fees, licenses, rents, concession charges and other charges for each transportation project or any part thereof"). Moreover, NJTA acknowledges that it may issue "transportation revenue bonds," *see* ECF No. 55 at 4 (citing N.J.S.A. 27:23-2), indicating that the proceeds therefrom could finance an unfavorable judgment. NJTA observes that issuing such bonds is not in its "sole discretion," because the Governor, and either the State Treasurer or the Director of the Division of Budget and Accounting within the Department of the Treasury, must first approve the issuance. *See* ECF No. 55 at 4; N.J.S.A. 27:23-3(F). Nevertheless, proceeds from the bonds are available, and the state is not legally responsible for judgments against NJTA merely because the Governor and another state official must approve bonds the Authority seeks to issue. *See* N.J.S.A. 27:23-2 ("[N]othing in this act contained shall be construed to authorize the Authority to incur indebtedness or liability on behalf of or payable by the State or any political subdivision thereof.").

Finally, under the third subfactor, a statutory provision under which "the State . . . expressly immunize[s] itself from the entity's liabilities" supports a finding that the entity is "not entitled to protection under the Eleventh Amendment." *Maliandi*, 845 F.3d at 90. In *Karns*, a statute governing the NJ Transit Corporation ("NJ Transit") provided that "the state is under no legal or other obligation to pay NJ Transit's debts or to reimburse NJ Transit for any judgments that it pays." 879 F.3d at 516 (citing N.J.S.A. 27:25–17). That provision weighed against sovereign immunity under the funding factor. *See Karns*, 879 F.3d at 516. Similarly, here, the State immunized itself from responsibility for NJTA's debts and liabilities. *See* N.J.S.A. 27:23-2 ("[N]othing in this act contained shall be construed to authorize the Authority to incur indebtedness or liability on behalf of or payable by the State or any political subdivision thereof."). Such statutory immunization likewise weighs against finding

8

that NJTA is entitled to sovereign immunity.[1]

Accordingly, based on all the relevant considerations *Fitchik* and subsequent precedents identify, the funding factor weighs against immunity.

> 2. *Status Under State Law*

The second *Fitchik* factor focuses on "the status of the agency under state law." 873 F.2d at 659. Relevant considerations include "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation." *Karns*, 879 F.3d at 516 (quoting *Fitchik*, 873 F.2d at 659). Courts may also consider "the entity's authority to exercise the power of eminent domain," whether state administrative procedure and civil service laws apply to the entity, "the entity's ability to enter contracts and make purchases on its own behalf, and whether the entity owns its own real estate." *Maliandi*, 845 F.3d at 91.

In determining "how state law treats the agency generally," *Fitchik*, 873 F.2d at 659, courts "look to (1) explicit statutory indications about how an entity should be regarded; (2) case law from the state courts—especially the state supreme court—regarding an entity's immunity or status as an arm of the State; and (3) whether the entity is subject to laws for which the State itself has waived its own immunity." *Maliandi*, 845 F.3d at 91. Each of these considerations favors—or at least does not weigh against—extending immunity to NJTA.

New Jersey statutes indicate that NJTA is an arm of the state. As was true of NJ Transit in

---

[1] *Karns* treated the statutory provision immunizing the State from NJ Transit's debts and liabilities as a consideration weighing against sovereign immunity under the funding factor. *See* 879 F.3d at 515–16. It did not, however, conclude that this statutory provision ended the inquiry, and it ultimately concluded that NJ Transit is an arm of the state entitled to sovereign immunity based on the state law and autonomy factors. *See id.* at 518–19. Likewise, although the statutory provision immunizing the State from NJTA's debts and liabilities counts against immunity under the funding factor, it is not dispositive, and I will proceed to address the remaining *Fitchik* factors as co-equals.

*Karns*, NJTA is "established in the State Department of Transportation," N.J.S.A. 27:23-3(A), "which is a principal department within the Executive Branch of the State of New Jersey." *Karns*, 879 F.3d at 517 (citing N.J.S.A. 27:1A-2). Also similar to NJ Transit, NJTA is "an instrumentality exercising public and essential governmental functions," and it "shall be deemed and held to be an essential governmental function of the State." N.J.S.A. 27:23-3(A); *Karns*, 879 F.3d at 517; *see also Jasmin v. N.J. Econ. Dev. Auth.*, Civ. No. 16-1002, 2018 WL 3617955, at *6 (D.N.J. July 30, 2018) (noting that the New Jersey Economic Development Authority ("NJEDA") performs an "an essential governmental function," which favored immunity) (citing N.J.S.A. 34:1B-15).

With respect to "case law from the state courts," *Maliandi*, 845 F.3d at 91, in 2016 the Appellate Division concluded that NJTA is immune from suit under a state statute that is analogous to section 1983, pursuant to which Plaintiff brings claims here. In *Roberts v. New Jersey Turnpike Authority*, the Appellate Division addressed whether NJTA qualifies as a "person" subject to suit under the New Jersey Civil Rights Act ("NJCRA"). No. A-2443-14T3, 2016 WL 6407276 (N.J. Super. Ct. App. Div. Oct. 31, 2016). *Roberts* does not directly address whether the NJTA is an arm of the state for purposes of sovereign immunity, but its reasoning applies equally in this case. The NJCRA "is modeled after . . . § 1983," and "'[g]iven their similarity,'" New Jersey courts "'apply § 1983 immunity doctrines to claims arising under the Civil Rights Act.'" *Id.* at *3 (quoting *Brown v. State*, 442 N.J. Super. 406, 425 (App. Div. 2015), *rev'd on other grounds*, 230 N.J. 84 (2017)). As *Roberts* recognized, *see* 2016 WL 6407276, at *3, "'[s]tates or governmental entities that are considered arms of the State for Eleventh Amendment purposes' are not 'persons' under § 1983." *Karns*, 879 F.3d at 519 (quoting *Will*, 491 U.S. at 70). In determining whether NJTA is a "person" under the NJCRA, *Roberts* emphasized that NJTA is "established within the Department of Transportation and constitutes 'an instrumentality exercising public and essential governmental functions,' whose activities in the exercise of its authority 'shall be deemed and held to be an essential

governmental function of the State.'" 2016 WL 6407276, at *4 (quoting N.J.S.A. 27:23–3(A)). And *Roberts* found that NJTA does not qualify as "a local government body" or "a municipal corporation," *Roberts*, 2016 WL 6407276, at *4, which in certain circumstances are subject to liability under section 1983. *See Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658 (1978). Accordingly, *Roberts* concluded that NJTA is not "a distinct entity, separate from the State," and it therefore does not qualify as a "person" subject to suit under the NJCRA. *Id.* at **4–5. This state court decision therefore supports the conclusion that NJTA is an arm of the state that is immune from suit under the Eleventh Amendment. *See Karns*, 879 F.3d at 517–18.

In concluding that NJTA is part of the State and therefore immune from suit under the NJCRA, *Roberts* relied on a line of state court precedents recognizing NJTA "as a State agency." 2016 WL 6407276, at *4. One such precedent is *McCabe v. New Jersey Turnpike Authority*, in which the Supreme Court of New Jersey addressed whether NJTA is immune from negligence suits brought in state courts. 35 N.J. 26, 28, 30–31 (1961). *McCabe* recognized that "[t]he general rule in the United States is that state highway or turnpike authorities are agencies of the state and are therefore entitled to the protection of the rule of sovereign immunity." 35 N.J. at 31. Thus, suits against NJTA— including negligence actions—are prohibited unless the State waived its immunity. *Id. McCabe* concluded, however, that the legislature waived NJTA's immunity from negligence suits in state courts by granting NJTA the power to sue and be sued, a provision to which the Court accorded a "liberal construction." *See id.* at 32–34 (quotations and citation omitted). As further support, the Court noted that the "characteristics of [NJTA]"—including its power to issue bonds, acquire property, exercise eminent domain, and fix tolls—"indicate a legislative willingness that the Authority be liable" in negligence actions. *See id.* at 34.

Although *McCabe* ultimately concluded that the State waived its immunity from negligence suits in state courts, *McCabe* supports the conclusion that state law treats NJTA as immune from suit

in the circumstances at issue, here. *McCabe* recognized that, as a state highway authority, NJTA is an "agenc[y] of the state and [is] therefore entitled to the protection of the rule of sovereign immunity." *See id.* at 31. In concluding that the legislature waived NJTA's immunity from negligence suits, *McCabe* rejected a then-prevalent rule under which statutory provisions authorizing suits against transportation authorities permitted suits in contract but not in tort. *See id.* at 31–32. But *McCabe* did not address whether the provision authorizing suits against NJTA waived its immunity from suits under civil rights statutes such as section 1983. Moreover, since *McCabe* was decided, the U.S. Supreme Court recognized "that a state does not 'consent to suit in federal court merely by stating its intention to sue and be sued.'" *Karns*, 879 F.3d at 517 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)). Thus, *McCabe*'s conclusion that the legislature waived NJTA's immunity from suits in negligence does not dictate a similar conclusion with respect to the action at issue, here. For purposes of this case, *McCabe* supports the proposition that NJTA is generally immune from suit as an arm of the state.

Consistent with *McCabe*, other state court decisions similarly recognize that NJTA is an arm of the state entitled to sovereign immunity absent a waiver. *See, e.g.*, *Safeway Trails, Inc. v. Furman*, 41 N.J. 467, 483 (1964), ("These Authorities[, including NJTA,] have been designated as instrumentalities and agencies of the State by the statutes creating them. In effect, they are arms of the State government operating certain highways for the State."), *cert. denied*, 379 U.S. 14 (1964); *Goldberg v. Hous. Auth. of Newark*, 70 N.J. Super. 245, 251 (App. Div. 1961) ("[O]ur Supreme Court held [in *McCabe*] that the Turnpike Authority is an agency of the State and is entitled to the protection of the rule of sovereign immunity, so that an action for negligence will not lie against such an agency unless there has been a waiver of immunity."), *rev'd on other grounds*, 38 N.J. 578 (1962). Thus, "case law from the state courts," *Maliandi*, 845 F.3d at 91, supports the conclusion that NJTA is an arm of the state.

Finally, as was true in *Maliandi*, consideration of "whether the entity is subject to laws for which the State itself has waived its own immunity" does not weigh heavily in favor of, or against, immunity for NJTA. 845 F.3d at 93. As was true of Montclair State University in *Maliandi*, *see id.*, NJTA is subject to the New Jersey Tort Claims Act ("NJTCA"). *See O'Brien v. N.J. Tpk. Auth.*, No. A-0549-20, 2022 WL 244118, at **4–5 (N.J. Super. Ct. App. Div. Jan. 27, 2022) (applying the NJTCA to NJTA). Being subject to a tort claims act generally tips in favor of immunity "because it implies that, like the State itself, [the entity] would be immune from tort claims absent the Act." *Maliandi*, 845 F.3d at 93. But the NJTCA "also applies to municipalities and counties, which do not benefit from Eleventh Amendment immunity." *Id.* (citing *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 401 (1979)). The inference that entities subject to the NJTCA would otherwise be immune absent that statute therefore does not apply with respect to NJTA. *See id.*

Nevertheless, several other factors relevant to NJTA's status under state law counsel in favor of immunity. NJTA is not required to pay "any taxes" on any transportation projects or property it acquires or uses, on any bonds it issues, or on any "income therefrom." N.J.S.A. 27:23-12; *Karns*, 879 F.3d at 517 (noting NJ Transit is exempt from state taxation, which favored immunity); *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1148 (3d Cir. 1995) (noting that exemption from state property taxation favors immunity). NJTA also has the authority to exercise the power of eminent domain, N.J.S.A. 27:23-5(j), "which likewise favors immunity." *Karns*, 879 F.3d at 517; *Christy*, 54 F.3d at 1148 (same) *Maliandi*, 845 F.3d at 95 (same, although noting that "New Jersey's political subdivisions also have this authority"). And state administrative procedure laws, *Maliandi*, 845 F.3d at 91, apply to NJTA. *See* N.J.S.A. 52:14B-2 (defining "[s]tate agency" for purposes of New Jersey Administrative Procedure Act ("NJAPA") as "each of the principal departments in the executive branch of the State Government, and all . . . authorities . . . within any such departments"); N.J.S.A. 27:23-5(s) (authorizing NJTA to "adopt regulations, pursuant to the [NJAPA] to provide open and

competitive procedures for awarding contracts for towing and storage services"); *cf. Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1310 (3d Cir. 1987) (noting that Rutgers University does not fall within definition of "state agency" under NJAPA, weighing against immunity).

Some considerations pertinent to NJTA's status under state law weigh against immunity. NJTA is "separately incorporated," *Fitchik*, 873 F.2d at 659, N.J.S.A. 27:23-3(A), which "disassociates an entity from its State and thus weakens its claim to Eleventh Amendment immunity." *Maliandi*, 845 F.3d at 93. NJTA is also authorized to "sue and be sued," N.J.S.A. 27:23-5(d), enter contracts, N.J.S.A. 27:23-5(l), and acquire real property, N.J.S.A. 27:23-5(i), all of which weigh against immunity. *Maliandi*, 845 F.3d at 93; *Fitchik*, 873 F.2d at 659; *Kovats*, 822 F.2d at 1310. And NJTA is authorized to hire, compensate, promote, and discharge employees "without regard to . . . Title 11A of the New Jersey Statutes," which is New Jersey's civil service code. N.J.S.A. 27:23-5(m); *Kovats*, 822 F.2d at 1310 (noting that Rutgers University is not subject to New Jersey's civil service laws, weighing against immunity); *cf. Maliandi*, 845 F.3d at 95 (noting that a "significant subset" of Montclair State University employees is subject to New Jersey's civil service laws, favoring immunity).

On balance, NJTA's status under state law counsels in favor of immunity from suit under the Eleventh Amendment. NJTA's general status under New Jersey law weighs substantially in favor of immunity, as the legislature deemed NJTA an "essential governmental function of the State," N.J.S.A. 27:23-3(A), and the Appellate Division recently held that NJTA is immune from suit under the NJCRA. *Roberts*, 2016 WL 6407276, at *1. NJTA also is not subject to taxation, it may exercise the power of eminent domain, and it is subject to New Jersey's administrative procedure laws. The few factors weighing against immunity do not tip the balance. Although NJTA "can sue and be sued," *Karns* recently concluded that "this is not dispositive" given the Supreme Court's guidance "that a state does not 'consent to suit in federal court merely by stating its intention to sue and be sued.'"

879 F.3d at 517 (quoting *Coll. Sav. Bank*, 527 U.S. at 676). That leaves NJTA's status as a separate corporation, its authority to enter contracts and acquire property, and its exemption from New Jersey's civil service laws. Faced with a similar distribution of subfactors, *Karns* concluded that NJ Transit Corporation's status under state law favors immunity. *See* 879 F.3d at 516–18. I reach the same conclusion here with respect to NJTA.

       3.     *Autonomy*

The final *Fitchik* factor concerns the degree of "autonomy from state control" that the entity retains. *Maliandi*, 845 F.3d at 83. Courts must analyze "the entity's governing structure and the oversight and control exerted by a State's governor and legislature." *Id.* at 96.

This factor weighs in favor of immunity. The Governor wields substantial control over NJTA's membership. Among NJTA's eight members, the Governor directly appoints seven, five of which the Governor appoints with advice and consent from the senate. N.J.S.A. 27:23-3(B). The eighth member is the Commissioner of Transportation, *see id.*, who the Governor appoints separately. N.J.S.A. 27:1A-4. The Governor therefore "appoint[s] the entire [NJTA] governing board," which indicates that NJTA lacks autonomy from the State. *See Karns*, 879 F.3d at 518 (finding that the Governor appoints the entire NJ Transit board, which is comprised of the Commissioner of Transportation, the State Treasurer, and eleven other members who the Governor appoints directly); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 548–49 (3d Cir. 2007) (concluding that the Governor's authority to appoint all nine members of a state university's board supported immunity); *Christy*, 54 F.3d at 1149 (noting that the Governor of Pennsylvania appoints all members of the Pennsylvania Turnpike Commission ("PTC") and concluding that "State authority over the appointment of Commission members lends obvious support to a finding of sovereignty"). In addition, the Governor is entitled to remove each appointed member for cause following a public hearing, N.J.S.A. 27:23-3(B), which further favors immunity. *See Maliandi*, 845 F.3d at 97

(concluding that governor's authority to remove university board members for cause limited the university's autonomy); *Bowers*, 475 F.3d at 549 (concluding that governor's authority to "remove a member of the board [of a state university] for cause with the approval of a majority of the senate" limited the university's autonomy).

The Governor also exercises veto authority over NJTA's actions. No resolution or action taken at an NJTA member meeting takes effect until ten days after the meeting, and during that ten-day period, the Governor may veto any action or resolution the members adopt. N.J.S.A. 27:23-3(F). Although "the Governor's veto power is constrained" insofar as the "Governor has a limited period to respond to the [members'] actions," the veto power nevertheless weighs in favor of immunity. *See Febres*, 445 F.3d at 231 (discussing constraints on governor's veto power due to the limited period of time during which governor may exercise veto but nevertheless finding veto power weighs in favor of immunity); *see also Karns*, 879 F.3d at 518; *Jasmin*, 2018 WL 3617955, at *6. Moreover, the Governor and either the "State Treasurer [or] the Director of the Division of Budget and Accounting in the Department of the Treasury" must approve any action "providing for the issuance of bonds, refunding bonds or other obligations or for the fixing, revising or adjusting of tolls for the use of any transportation project." N.J.S.A. 27:23-3(F). This power applies without any limitation on the period during which the Governor may respond.

Some considerations weigh in favor of finding that NJTA is autonomous from the state. As was true of the PTC in *Christy*, NJTA "may fix and revise tolls; enter contracts in its own name; issue bonds and notes; sue in its own name; purchase and own property; and promulgate rules and regulations for its own governance." 54 F.3d at 1149; *see* N.J.S.A. 27:23-5(g) (fix and revise tolls), N.J.S.A. 27:23-5(l) (enter contracts), N.J.S.A. 27:23-5(f) (issue bonds), N.J.S.A. 27:23-5(d) (sue in its own name), N.J.S.A. 27:23-5(i) (acquire real property), and N.J.S.A. 27:23-5(a) ("adopt bylaws for the regulation of its affairs and the conduct of its business"). However, to a greater extent than

16

was true in *Christy*, "several of these powers are subject to a degree of state control," as the Governor

exercises veto authority over any actions NJTA members adopt. *See Christy*, 54 F.3d at 1149 (noting

that the PTC's powers were constrained because the "Attorney General must review the form and

legality of each contract and rule or regulation" the PTC adopts and that the "issuance of bonds and

notes is subject to state approval," without discussing any general gubernatorial veto power).

Taken together, the relevant considerations demonstrate the NJTA exercises only "limited

autonomy apart from [the State]," and as such, the autonomy factor weighs in favor of immunity. *See*

*Karns*, 879 F.3d at 518.

4. *Balancing*

Having given equal consideration to each of the three *Fitchik* factors, the Court must balance

them to determine whether NJTA is an arm of the state. *Karns*, 879 F.3d at 518. Although the funding

factor counsels against immunity, both the state law and autonomy factors weigh in favor. Balancing

the three factors together, I find that NJTA qualifies as an arm of the state and is therefore immune

from suit under the Eleventh Amendment. *See id.* at 518–19 (finding that NJ Transit is an arm of the

state where funding factor weighed against immunity but state law and autonomy factors weighed in

favor); *Maliandi*, 845 F.3d at 99 (same with respect to Montclair State University); *Jasmin*, 2018 WL

3617955, at *7 (same with respect to NJEDA).

Plaintiff's position that *Christy* dictates a different result is unavailing. *Christy* held that the

Pennsylvania Turnpike Commission is not an arm of the state. 54 F.3d at 1150. But the Third Circuit

decided *Christy* at a time when courts treated the funding factor, which weighed against immunity in

that case, as "the 'most important'" consideration. *Id.* at 1145 (quoting *Fitchik*, 873 F.2d at 659).

Since *Christy*, the Third Circuit has concluded—based on intervening Supreme Court precedent—

that courts may "'no longer ascribe primacy to the [funding] factor'" and that "each of the factors is

considered 'co-equal.'" *Karns*, 879 F.3d at 513 (quoting *Benn*, 426 F.3d at 239–40); *Maliandi*, 845

F.3d at 84 ("We now treat all three *Fitchik* factors as co-equals, with the funding factor breaking the tie in a close case.") (citations omitted). Moreover, in *Christy*, the state law factor weighed against immunity, in no small part due to the Supreme Court of Pennsylvania's decision that the PTC is not an arm of the state. *See* 54 F.3d at 1148–49. In contrast, a recent New Jersey case held that NJTA is immune from suits brought under the NJCRA—a state statute that is analogous to section 1983—because it concluded that NJTA is not "a distinct entity, separate from the State." *Roberts*, 2016 WL 6407276, at \*\*4–5; *see also Goldberg*, 70 N.J. Super. at 251. And in *Christy*, the autonomy factor weighed only "slightly" in favor of immunity. 54 F.3d at 1149–50. Here, the autonomy factor favors immunity to a greater extent, in part because the Governor exercises general veto power over NJTA actions, which was absent in *Christy*. For these reasons, *Christy* does not control the outcome in this case.

### B. Judicial Estoppel

Plaintiff also argues that the doctrine of judicial estoppel precludes NJTA from invoking sovereign immunity because it took a contrary position during a separate case in 2008. I disagree.

Judicial estoppel is an "equitable doctrine" that a court may invoke "at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotations and citations omitted). The doctrine generally "prevents a party from prevailing . . . on an argument" in one case or phase of a case, "and then relying on a contradictory argument to prevail in another" case or phase thereof. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 221 (3d Cir. 2015) (applying doctrine to purportedly inconsistent positions taken during different phases of same litigation); *New Hampshire*, 532 U.S. at 751–52 (applying doctrine to purportedly inconsistent positions taken during different cases). "It does not prevent the assertion of all inconsistent positions but 'is designed to prevent litigants from playing fast and loose with the courts.'" *Thompson v. Real Estate Mortg. Network, Inc.*, 822 F. App'x 136, 137 (3d Cir. 2020) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d

355, 358 (3d Cir. 1996)).

In determining whether judicial estoppel applies, courts examine: (1) whether a party adopted a position that is "clearly inconsistent with an earlier position"; (2) " whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51; *Carlyle*, 779 F.3d at 221–22. However, "[i]n enumerating these factors," the Supreme Court did "not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751. Courts may take "[a]dditional considerations" into account based on the "specific factual context[]." *Id.*

Judicial estoppel is not applicable in all circumstances. In *New Hampshire*, the Court recognized "that 'ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states.'" 532 U.S. at 755 (quoting *Illinois ex rel. Gordon v. Campbell*, 329 U.S. 362, 369 (1946)); *see also Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 239 F.R.D. 9, 24 (D.D.C. 2006) (noting that judicial estoppel "is generally unavailable as to government litigants"). Although the Court applied judicial estoppel to a state in *New Hampshire*, it noted that the doctrine likely would not apply "where the shift in the government's position is the result of a change in public policy" or law, which was not at issue. *See id.* at 755–56. Similarly, many courts of appeals do not apply judicial estoppel when a party's ostensibly inconsistent position results from a "change in the law." *See Longaberger Co. v. Kolt*, 586 F.3d 459, 470–71 (6th Cir. 2009) (collecting cases), *abrogated on other grounds*, *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Ben. Plan*, 577 U.S. 136 (2016); *accord United States v. Vastola*, 989 F.2d 1318, 1324 (3d Cir. 1993) (declining to apply judicial estoppel where

19

government's subsequent inconsistent position resulted from a change in the law).

Even assuming that the three primary factors under *New Hampshire* are satisfied, I decline to apply judicial estoppel in these circumstances. NJTA is an arm of the state, to which judicial estoppel ordinarily does not apply. *See New Hampshire*, 532 U.S. at 755. Furthermore, NJTA's change in position compared to the briefs it filed in 2008 is primarily attributable to a change in the law. *See Longaberger*, 586 F.3d at 470–71. Both parties acknowledge that sovereign immunity law has developed substantially in the past several decades. *See* ECF No. 55 at 2; ECF No. 56 at 13; *see also Karns*, 879 F.3d at 513–14 (discussing changes). Yet, in conceding that NJTA was separate from the State for purposes of sovereign immunity, NJTA's 2008 brief relied primarily on a district court decision from 1967. *See* NJTA Brief in Support of R. 12(c) Motion for Judgment on the Pleadings at 7 (brief filed May 9, 2008), *Nevius v. N.J. State Police*, Civ. No. 07-3180, 2009 WL 137340 (D.N.J. Jan. 20, 2009) (citing *S.J. Groves & Sons Co. v. N.J. Tpk. Auth.*, 268 F. Supp. 568, 574–78 (D.N.J. 1967)). And that decision applied a now outdated standard by treating what courts call the funding factor under contemporary doctrine as the predominant consideration in determining whether an entity is an arm of the state. *See* 268 F. Supp. at 574 (noting that "[w]here monetary damages are sought, the dominant factor is the impact of such relief upon the State treasury").

Important developments in sovereign immunity law did occur shortly before NJTA filed its 2008 brief, including the Third Circuit's recognition that courts must now treat each of the *Fitchik* factors as "co-equal." *See Benn*, 426 F.3d at 239–40 (decided in 2005). But to the Court's knowledge, at the time NJTA filed its brief in 2008, *S.J. Groves* was the only decision concerning whether NJTA was an arm of the state and therefore immune from suit in federal court under the Eleventh Amendment. The Supreme Court of New Jersey's decision in *McCabe* addressed NJTA's immunity from suit in state court. *See, e.g.*, *S.J. Groves*, 268 F. Supp. at 573 (citing to *McCabe* and noting that "[t]he defendant concedes there is not obstacle to this suit in New Jersey's courts"). Thus,

notwithstanding *McCabe*'s recognition that NJTA is a state agency entitled to immunity from suit in state court absent a waiver, *see* 35 N.J. at 31, NJTA could have reasonably concluded in 2008 that it remained bound by the only applicable federal precedent—*S.J. Groves*—concerning its immunity from suit in federal court. And for the reasons discussed *supra*, the analysis in *S.J. Groves* does not comport with contemporary Eleventh Amendment sovereign immunity doctrine, justifying NJTA's position in this case. *See also Karns*, 879 F.3d at 518–19 (holding under contemporary doctrine that NJ Transit is an arm of the state based on factors similar to those at issue here).

Based on NJTA's status as an arm of the State and the substantial changes in sovereign immunity law since the decision upon which NJTA's previous position relied, NJTA is not estopped from asserting sovereign immunity in this case.

### C.    Section 1983

Section 1983 provides that any "person" who deprives a U.S. citizen or any person within its jurisdiction of a right under the U.S. Constitution or federal law while acting under color of state law shall be liable in a suit at law or in equity. 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff "must establish that the individual or entity who allegedly committed the constitutional violation is a 'person' for the purposes of § 1983." *Karns*, 879 F.3d at 519. An arm of the state that is immune from suit under the Eleventh Amendment is not a "person" under section 1983. *See id.* (citing *Will*, 491 U.S. at 70). Because NJTA is an arm of the state, as explained *supra*, "[t]he Eleventh Amendment therefore functions as a complete bar, immunizing [NJTA] from any § 1983 liability." *Karns*, 879 F.3d at 519. Accordingly, Plaintiff's claims against NJTA for monetary damages and injunctive relief under section 1983 are dismissed.

## IV.    CONCLUSION

For the reasons set forth above, NJTA's Motion to Dismiss is **GRANTED** and Plaintiff's claims against NJTA are **DISMISSED**. To the extent Plaintiff seeks to assert section 1983 claims

against individual NJTA Commissioners, Plaintiffs must do so by filing a motion before the Magistrate Judge within twenty-one (21) days from the date of the accompanying Order. An appropriate form of Order is filed herewith.


Date: April 11, 2022                                                /s/ Freda L. Wolfson
                                                                    Hon. Freda L. Wolfson
                                                                    U.S. Chief District Judge